FERNANDO MELCHOR-GLORIA, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 12695

March 10, 1983                    660 P.2d 109

---

[1]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to participate in this case, pursuant to Nev. Const. art. 6, § 19; SCR 10.

*William N. Dunseath,* Public Defender, and *Dennis E. Widdis,* Deputy Public Defender, Washoe County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills B. Lane,* District Attorney, and *Edward B. Horn,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

The instant appeal arises out of appellant Fernando Melchor-Gloria's conviction of second-degree murder. The issues presented on appeal concern procedural aspects of appellant's trial; accordingly, the factual setting of the crime underlying this appeal is set forth in brief detail. The victim's body was discovered in appellant's hotel room in Reno, Nevada, on the morning of July 27, 1979. The cause of death was a stab wound in the neck. Shortly thereafter, appellant was arrested at the apartment of a friend. At the time of arrest police recovered a knife which had been in appellant's possession; tests revealed the knife had human blood under the hilt. Sharpening marks on the knife indicated it could have been sharpened with a file found in appellant's apartment, and various blood traces were found on clothing appellant had brought to the apartment. In addition, the victim's paycheck stub was found in appellant's pocket.

At trial, appellant did not deny he stabbed the victim, but attempted to establish that the killing was in self-defense. The prosecution, however, established several inconsistencies which cast doubt on appellant's story. The jury apparently disbelieved appellant's version of events, and found him guilty of second-degree murder. This appeal followed.

### Double Jeopardy

The first issue presented by appellant arises out of a mistrial which was declared shortly after the commencement of appellant's first trial. After his arrest, appellant made certain

incriminating statements while being interrogated by police investigators. Appellant, a native of Mexico, could not speak English fluently, and a police officer translated questions from English to Spanish and appellant's responses from Spanish to English. This interrogation was taped, and the initial transcripts made from the police officer's translations indicated appellant had been properly admonished concerning his *Miranda* rights.

Before trial, the tape recording of the interrogation was given to a college Spanish instructor, who made a Spanish-to-English translation of the entire interview. The translation prepared by the instructor revealed that appellant had not been given complete *Miranda* warnings prior to his interrogation by police.[1] The prosecutor received this taped translation on Saturday, December 8, 1979, and received a corrected transcript of this second translation by 9:30 a.m. Monday, December 10, 1979. Although the prosecutor read the transcripts while preparing his opening statement, he did not review the portion of the transcript which contained the *Miranda* warnings.

Defense counsel was aware of the deficiencies in the *Miranda* warnings, and met in chambers with the prosecutor and judge prior to opening statements on Tuesday, December 11, 1979. At that time the issue of the admissibility of appellant's statements was discussed; defense counsel came away from that meeting with the understanding an agreement had been reached to the effect that the issue of the admissibility of appellant's statements would be dealt with in an appropriate hearing.

After the meeting in chambers, however, the prosecutor commenced his opening statement and began referring to appellant's potentially inadmissible statements. Defense counsel objected, and in the ensuing bench conference the prosecutor successfully argued against being limited in opening statement. The prosecutor later admitted that he made his argument despite the fact that he had not read the relevant portion of the college instructor's transcript, and in the face of defense counsel's representations appellant's statements were inadmissible. In addition, the prosecutor acknowledged that should he be mistaken on the issue of admissibility, a mistrial would have to be declared.

The prosecutor emphasized both the existence and content of appellant's incriminating statements during the remainder of his opening statement. After opening statements were completed and the first witness dismissed, a recess was called. The

---

[1] While the officer advised appellant he had the right to remain silent and to have an attorney present, appellant was not admonished that any statement he might make could be used against him in a court of law.

prosecutor then interviewed one of the interrogating officers and reviewed the transcript with him. In the course of this interview, the prosecutor came to the conclusion that the *Miranda* warnings given appellant were defective. Appellant's statements subsequently were suppressed, and on defense motion, a mistrial without prejudice to the prosecution was declared.

The issue this court must address on appeal is whether, under the particular facts of this case, the Double Jeopardy Clause of the United States or Nevada Constitutions bars appellant's retrial.

As a general rule, a defendant's motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution. Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 2093 (1982) (Stevens, J., concurring); United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547 (1971). There is an exception to this general rule which applies in those cases in which the prosecutor intended to provoke a mistrial or otherwise engaged in ''over-reaching'' or ''harassment.'' Oregon v. Kennedy, 102 S.Ct. at 2093; United States v. Dinitz, 424 U.S. 600, 607, 96 S.Ct. 1075 (1976). Further, prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. Oregon v. Kennedy, 102 S.Ct. at 2089. These double jeopardy principles have been made obligatory upon the states. Benton v. Maryland, 395 U.S. 784, 793-796, 89 S.Ct. 2056 (1969).

The dispositive question is thus whether the prosecutor's conduct under the circumstances of the instant case constitutes ''overreaching'' or ''harassment'' intended to goad appellant into moving for a mistrial. In addressing this issue, we note the trial court came to the conclusion that there was no prosecutorial overreaching. The court made an express finding there was no intentional conduct on the part of the prosecutor which could be classified as bad faith. The trial court also found that the prosecutor was not guilty of gross negligence. These appear to represent findings of fact which must be sustained on appeal unless clearly erroneous. *See* United States v. Green, 636 F.2d 925, 928 (4th Cir. 1980); United States v. Calderon, 618 F.2d 88, 90 (9th Cir. 1980).

Our review of the record convinces us that the trial court's findings are not clearly erroneous and therefore should be sustained on appeal. Although the trial court correctly concluded

the prosecutor had been negligent, we believe the relatively unusual factual setting of the instant case partially mitigates the prosecutor's derelictions. Appellant did not speak fluent English, and the prosecutor could reasonably assume appellant had been properly admonished when the first transcript of the interrogation so indicated. The prosecutor testified that he had never experienced a similar problem before, and that he assumed the interrogation had been properly conducted in light of the considerable experience of the investigating officers. The prosecutor also stated he did not personally come to the conclusion the admonishments were defective until he had had the opportunity to review the second transcript and interview one of the interrogating officers. Finally, given the time sequence involved, the prosecutor obtaining the second transcript shortly before trial, suggests the prosecutor's failure to review the transcript is understandable, if not entirely excusable.

It is true that defense counsel warned the prosecutor of the defective admonishments before the prosecutor began his opening statements. The prosecutor testified the reason he did not pay particular attention to counsel's representations was that he felt they involved a common defense ploy which was not entitled to much credence. Given the nature of the adversary relationship between a prosecutor and defense counsel, this reaction appears understandable, although not entirely commendable. Although we do not approve of the prosecutor's conduct, it nonetheless appears that the trial court's finding that the prosecutor did not intentionally engage in overreaching or harassment is not clearly erroneous. As a result, we find that there was no double jeopardy prohibition to retrying appellant.

### Competency Hearing

The second issue raised by appellant concerns the trial court's denial of a motion made for a competency hearing. Defense counsel made this motion outside the presence of the jury in the middle of trial. The court reconvened without the jury, and heard evidence from three witnesses: Dr. Brandenburg, a clinical psychologist employed by the State of Nevada; Dr. Chappel, a psychiatrist; and Gus Estrada, appellant's trial interpreter. At the conclusion of this testimony, the trial court denied appellant's motion for a full competency hearing, finding that no doubt had been raised as to appellant's competency to stand trial. Appellant now maintains the denial of his request for a full competency hearing constitutes error. We disagree.

The test to be applied in determining competency "must be

whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788 (1960). A hearing to determine a defendant's competency is constitutionally and statutorily required where a reasonable doubt exists on the issue. Moore v. United States, 464 F.2d 663, 666 (9th Cir. 1972); Warden v. Conner, 93 Nev. 209, 210-211, 562 P.2d 483 (1977); NRS 178.400-178.440. Whether such a doubt is raised is within the discretion of the trial court. Kelly v. State, 93 Nev. 154, 155, 561 P.2d 449 (1977); Williams v. State, 85 Nev. 169, 174, 451 P.2d 848 (1969), cert. den. 396 U.S. 916, 90 S.Ct. 239 (1969).

The court's discretion in this area, however, is not unbridled. A formal competency hearing is constitutionally compelled any time there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. In this context, evidence is "substantial" if it "raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence." Moore v. United States, 464 F.2d at 666. The trial court's sole function in such circumstances is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. Id. at 666. If such evidence exists, the failure of the court to order a formal competency hearing is an abuse of discretion and a denial of due process. Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836 (1966); Moore v. United States, 464 F.2d at 666.

The trial court based its conclusion there was no reasonable doubt as to appellant's competency on medical testimony, the testimony of the trial interpreter, and its own observations of appellant during the trial. See Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896 (1975) (in determining whether competency hearing required, court focuses in on three factors: the defendant's history of irrational behavior, his demeanor at trial, and prior medical opinion of his competence to stand trial). We have reviewed the record, and conclude the trial court's analysis is correct. The testimony offered does not, in our opinion, raise a reasonable doubt as to appellant's competency. Dr. Chappel conceded during cross-examination that he was not in a position to determine appellant's competency and that his

opinion as to appellant's competency was based in large part on tests administered by Dr. Brandenburg. Dr. Brandenburg in turn conceded that appellant understood the concepts of murder, malice aforethought and premeditation if they were explained simplistically by an interpreter. Gus Estrada, the interpreter, testified that even though there was occasionally confusion in the exchanges between appellant and defense counsel, appellant knew what was going on in his trial.

Based on this testimony, and our review of the record as a whole, we believe that whatever questions arose as to appellant's competency were occasioned by translation problems and appellant's limited education. As no reasonable doubt was raised as to appellant's lack of rational or factual understanding of the proceedings, the trial court did not err when it refused to grant appellant's motion for a competency hearing.

We have considered the other issues raised by appellant and find them to be without merit. As there was no due process bar to appellant's retrial, and as the trial court did not err in denying appellant's motion for a competency hearing, we hereby order his conviction affirmed.

MANOUKIAN, C. J., SPRINGER, MOWBRAY, and STEFFEN, JJ., and ZENOFF, SR. J.,[2] concur.

---

[2]The Chief Justice assigned SENIOR JUSTICE DAVID ZENOFF to participate in the decision of this matter, in the place and stead of THE HON. E. M. GUNDERSON, Justice, pursuant to the Nevada Constitution, art. 6, § 19(1)(a) and 19(1)(c), and SCR 10.