858 P.2d 843 (1993)
Calvin E. TAYLOR, Appellant,
v.
The STATE of Nevada, Respondent.
No. 22127.
Supreme Court of Nevada.
September 2, 1993.
*844 Douglas Norberg, Reno, for appellant.
Frankie Sue Del Papa, Atty. Gen., Carson City, Dorothy Nash Holmes, Dist. Atty., Scott W. Edwards, Deputy Dist. Atty., Washoe County, for respondent.

OPINION
STEFFEN, Justice.
Appellant was convicted by the district court, pursuant to a jury verdict, of one count of lewdness with a child under the age of fourteen years. NRS 201.230. Appellant contends that the district court abused its discretion in admitting evidence of a prior, allegedly bad act. We agree and reverse the judgment of conviction.
At trial, the nine-year-old victim testified that appellant, her neighbor, invited her into his house. Appellant sat on the coffee table and then asked the victim if she would sit on his lap. The victim testified that she sat on appellant's lap and that appellant touched her between her legs, on the outside of her underpants, by sticking his hand up her shorts. As the victim was leaving, appellant asked her if she would hug and kiss him. The victim complied with the request but did not remember at trial whether she kissed appellant on the mouth. Two neighbor boys were present at the open doorway of appellant's house during the incident. Neither boy saw appellant touch the child inappropriately.
During cross-examination, as appellant's counsel was attempting to elicit information concerning bias against appellant from the mother of the two neighbor boys, the mother spontaneously mentioned that her husband had observed another neighborhood child sitting on appellant's lap.
At the state's request, the district court conducted a hearing concerning admission of testimony from the neighbor boys' father, pursuant to Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985). The state indicated that it wished to present testimony from the boys' father concerning the father's observation of the other neighborhood girl sitting on appellant's lap for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident pursuant to NRS 48.045(2). The state also argued at the hearing that the evidence was admissible for the following reason:
[D]efense counsel has asked [the mother,] during cross-examination, if her husband had ever said anything derogatory about the Defendant to her, and she stated yes, that he had told her about this incident with the young black child.

*845 And the defense has now opened the door for this response, or this next witness to come in and testify in regards to that black child being seated upon the lap of the defendant....
It wouldn't be hearsay, it would be direct evidence, to fill in the gaps for the door that was opened by the defense.
So even if there is a question as to probative value versus prejudicial effect, I think that's now outweighed by the fact the door has been opened by the defense, and that this type of testimony should be allowed in.
The district court concluded that the evidence was prejudicial and clearly collateral. Nonetheless, the district court concluded that the father could testify about seeing the girl sit on appellant's lap because the defense, through the spontaneous statement of the boys' mother on cross-examination, had opened the door to this issue, and admission of the testimony was mandated by Findley v. State, 94 Nev. 212, 577 P.2d 867 (1978) (evidence showing that an accused possesses a specific emotional propensity for sexual aberration is relevant).
The father of the two boys testified that he "noticed something very unusual" about a week prior to the incident with the victim. The father saw several children at appellant's house, including one nine or ten-year-old girl who was sitting on appellant's lap. The father called his wife and told her that "it is awful unusual that [appellant] has lived here this amount of time and all the kids are over on the backside of the house, and the girl was sitting on his lap." The state did not question the father about his possible bias towards appellant.
During closing arguments, the state argued, in part, the following:
There is another corroborative fact that has to be taken into consideration, and there is an instruction which will tell you how to use this evidence.
We have an individual, the Defendant, who is seen approximately a week before July 23rd, with another little girl sitting on his lap, with other children around.
So it's not unusual for this man to have children around his house. Why would somebody who had been in the neighborhood for such a short time have children around?
Why would the Defendant have children sitting on his lap?
These are things for you to consider when you go to the jury room.
The district court gave an instruction to the jury which recited NRS 48.045(2).
The jury returned a verdict of guilty. On April 4, 1991, the district court convicted appellant of one count of lewdness with a child under age of fourteen and sentenced appellant to serve a term of ten years in the Nevada State Prison. This appeal followed.
Appellant contends that the district court erred in permitting the state to present irrelevant and prejudicial testimony indicating that a neighbor girl sat on appellant's lap. We agree. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. The simple fact that a girl sat on appellant's lap does not tend to increase or decrease the probability of the existence of any fact necessary to prove that appellant committed the act of lewdness on the victim with which appellant was charged. The record is devoid of any evidence suggesting that the other girl was also a victim of lewdness by appellant. The state merely presented an apparently innocent act as though it were a bad act without providing any nexus between that act and the elements of the offense charged in this case.
The state argues, nevertheless, that the evidence was relevant to corroborate the victim's story. We disagree. Appellant did not deny the fact that the victim sat on his lap. Rather, appellant's argument was that although the victim sat on his lap, he did not touch her in an inappropriate manner. The victim and the two boys testified that the victim sat on appellant's lap. *846 There was no need to corroborate this undisputed testimony.
The evidence concerning the girl sitting on appellant's lap could only be relevant for one purpose: to prove that appellant was of bad character and acted in conformity with his bad character. The state's closing argument reveals that this was the purpose for the state's desire to introduce the evidence. Absent certain exceptions, evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. Further, evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. See NRS 48.045. The state argues that the testimony at issue falls within the exceptions to this general rule. Specifically, the state argues, pursuant to NRS 48.045(2), that the testimony is relevant to prove intent, absence of mistake or accident and appellant's common scheme or plan. The state notes that "in the sex crime cases a generally more liberal attitude exists in admitting evidence of prior and subsequent proscribed sexual conduct."
NRS 48.045(2) provides:
Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
"In some fairly recent cases, we have allowed greater latitude in evidence presented to show aberrant sexual propensities." Berner v. State, 104 Nev. 695, 697, 765 P.2d 1144, 1146 (1988). "We have been careful, however, to require that such evidence must be probative of something beyond mere bad character, such as intent, motive or plan." Id. Significantly, each of these fairly recent cases involved conduct which is indisputably "bad." See, e.g., Daly v. State, 99 Nev. 564, 665 P.2d 798 (1983) (victim's testimony of uncharged acts of sexual assault by defendant admissible); Findley v. State, 94 Nev. 212, 577 P.2d 867 (1978) (two women allowed to testify that nine years earlier defendant had molested them in a manner similar to that with which defendant was charged); Willett v. State, 94 Nev. 620, 584 P.2d 684 (1978) (minor boy allowed to testify about a prior act of oral copulation defendant performed on the boy); Simpson v. State, 94 Nev. 760, 587 P.2d 1319 (1978) (defendant's minor step-children testified to prior illicit sexual conduct with them and other members of the family). We have not extended, and do not now extend, greater latitude in admitting evidence of prior acts which do not involve proscribed sexual conduct or sexual aberration. The act of having a child sit on one's lap is not a bad act, is not proscribed sexual conduct, and is not, in itself, an indication of sexual aberration.
The state contends that the evidence was relevant to prove intent, absence of mistake, absence of accident, and appellant's common scheme or plan. The general rule is that evidence of prior acts is inadmissible to prove character or actions in conformity therewith. The state has not explained how any of the exceptions contained in NRS 48.045(2) specifically relate to the facts of this case. A mere recitation of the statute is not sufficient justification for the admission of prior acts.
Similarly, the state may not present character evidence as rebuttal to a defense which the accused has not yet presented. "`Before an issue can be said to be raised, which would permit the introduction of such evidence so obviously prejudicial to the accused, it must have been raised in substance if not in so many words, and the issue so raised must be one to which the prejudicial evidence is relevant. The mere theory that a plea of not guilty puts everything material in issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defences in order to rebut them at the outset with some damning piece of prejudice.'" McCormick on Evidence § 190 at 452 n. 54 (Edward W. Cleary, 2d ed. 1972) *847 (quoting Lord Sumner in Thompson v. The King, App.Cas. 221, 232 (1918)). In this case, the state may not legitimately claim that the evidence was relevant to rebut claims of accident or mistake because appellant did not present a defense based on accident or mistake.
"The use of uncharged bad acts to convict a defendant is heavily disfavored in our system of criminal justice. Such evidence is likely to be prejudicial or irrelevant, and forces the accused to defend himself against vague and unsubstantiated charges.... Evidence of uncharged misconduct may unduly influence the jury, and result in a conviction of the accused because the jury believes he is a bad person.... The use of specific conduct to show a propensity to commit the crime charged is clearly prohibited by Nevada law, ... and is commonly regarded as sufficient grounds for reversal." Berner v. State, 104 Nev 695, 696-97, 765 P.2d 1144, 1145-46 (1988) (citations omitted). We therefore conclude that the district court abused its discretion in admitting the evidence of the prior act.
"We have established certain considerations which are relevant to the decision of whether error is harmless or prejudicial. These include whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged." Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985). The issue of guilt or innocence was close in this case. Although the child testified that appellant touched her inappropriately, there was no physical evidence and the two boys who were present at the time of the alleged misconduct did not see it happen. In evaluating the quantity and character of the error, we find it significant that the father's entire testimony concerned the alleged prior act, and the state emphasized the testimony during closing argument. Finally, in evaluating the gravity of the crime charged, we note that lewdness with a child is among the most socially stigmatized offenses and the crime carries the potential of a harsh sentence, as evidenced by the ten year prison term imposed in this case. We are unable to conclude that the error in this case was harmless. Accordingly, we reverse the judgment of conviction, and remand for a new trial.
YOUNG, J., concurs.
SHEARING, Justice, concurring in part and dissenting in part:
The conviction of appellant Calvin Taylor should be affirmed. The evidence of a prior allegedly bad act was properly admitted to rebut the implication of witness bias elicited by appellant's counsel. However, in view of the majority's rejection of that view, I concur in the remand of the case to the district court.
C.C. was a prosecution witness who was a neighbor of appellant and was the first adult to whom the nine-year-old victim told about appellant's actions. On cross-examination appellant's counsel attempted to show that C.C. and her husband, G.C., were biased against appellant. The following dialogue took place during cross-examination between C.C. and appellant's counsel:
Q. Mrs. [C.C.], you talked with your husband about what happened?
A. Yes.
Q. Did he like Calvin at that time?
A. He did not know Calvin. Neither did I.
Q. So he never talked to you about Calvin before this happened?
A. No.
Q. You never heard him say degrading things about him?
A. Oh, yes. Yes, he did that, I want to say two or three weeks before this happened to [victim]. I was at work, and I always call and check in on the kids on my break, and my husband said to me: You know, C.C., it's really strange. That little [neighbor] girl ... he hadCalvin had some chairs sitting out in back of his house
MR. PLATER: Your Honor, may I interrupt this witness for a second?
(Both Counsel approached the bench.)
BY MR. PLATER:

*848 Q. You were telling us that your husband had previously mentioned something about Calvin; correct?
A. Yes.
Q. And was the previous statement derogatory or degrading of Mr. Taylor?
A. Well, I can only tell you what my husband told me that he saw.
Q. What I am asking is: Did he say anything degrading about Mr. Taylor?
A. I guess it was degrading.
Q. In fact, isn't it true that you knew your husband did not like Mr. Taylor before this happened?
A. No, I cannot say that.
Thus defense counsel himself elicited the testimony about the allegedly bad act of which appellant now complains. Furthermore, through dogged persistence he was able to get C.C. to state that the comment was in fact degrading, thereby leaving the potential impression with the jury that she had a bias which might affect her credibility or the weight that ought to be given her testimony.
Once appellant opened this door, basic fairness militated in favor of permitting respondent to rehabilitate its witness by putting her husband on the stand and having him state exactly what he said to his wife in order to negate the suggestion that the comment reflected a bias which might have infected C.C.'s testimony. Indeed, the district court relied on the fact that the door was opened by appellant in allowing G.C.'s testimony. The court stated: "My initial reaction as I told counsel in chambers, was to exclude the testimony. However, the door has been opened, and I do believe the State is therefore entitled to go forward." Once appellant elicited information regarding the conversation between G.C. and C.C., and tried to characterize it as indicating prejudice, respondent had the right to complete the picture by allowing G.C. to testify as to what he actually said to his wife.
Applicable to this case is the line of cases addressing the "open door" or "invited error" doctrine.[1] This doctrine is firmly rooted in case law. Cases establish that ordinarily inadmissible evidence may be rendered admissible when the complaining party is the party who first broached the issue. I will set forth just a few of the many cases in which the evidence is even more prejudicial than in the instant case.
In State v. Patterson, 284 N.C. 190, 200 S.E.2d 16 (1973), the Supreme Court of North Carolina held that where evidence of bias is elicited on cross-examination, the witness is entitled to explain if he can, on redirect exam, the circumstances giving rise to the bias. In Patterson, the trial court found defendant guilty of first degree murder of his wife. Id. During the trial, Pamela Wiggins, the daughter of the deceased wife and stepdaughter of the defendant, testified as a prosecution witness. Id. 200 S.E.2d at 20. On cross-examination, defense counsel elicited statements that Pamela disliked the defendant and harbored a feeling of ill will toward him, thus impeaching her credibility by showing bias. Id.
During the State's redirect, Pamela testified as follows:
A. I have disliked (defendant) ever since he started arguments and all with my mother. I have some other reasons for disliking him, all the other things he had done to me.
Q. What are some of the things that he's done to you to cause you to dislike (defendant)?
A. He raped me.

*849 (objection to strike by defense counsel overruled)
Id.
In upholding the admissibility of Pamela's statement that the defendant had raped her, the court stated that although
it is a general rule of evidence that in a prosecution for a particular crime the state cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense, (here) evidence was elicited from Pamela Wiggins on cross-examination calculated and intended to show bias and to discredit her testimony. This calls for application of the rule that where evidence of bias is elicited on cross-examination, the witness is entitled to explain, if he can, on redirect examination, the circumstances giving rise to bias so that the witness may stand in a fair and just light before the jury.
Id. The court then went on to support its holding by quoting an 1886 case:
A party cannot be allowed to impeach a witness on the cross-examination by calling out evidence culpatory of himself and there stop, leaving the opposing party without opportunity to have the witness explain his conduct, and thus place it in an unobjectionable light if he can. In such case the opposing party has the right to such explanation, even though it may affect adversely the party who cross-examined. Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so.
Id. (quoting State v. Glenn, 95 N.C. 677 (1886)).
Moreover, in State v. Recor, 150 Vt. 40, 549 A.2d 1382 (1988), the Supreme Court of Vermont held that in a prosecution for child sexual abuse, the cross-examination of a complaining witness which was designed not only to demonstrate bias against defendant but also to show that the bias was unwarranted opened the door for prosecution to question that witness on redirect regarding an earlier, uncharged sexual assault by defendant.
In Recor, defense counsel, during cross-examination, attacked the complaining witness' credibility by attempting to show a pronounced bias against defendant. Id. 549 A.2d at 1385. Specifically, counsel questioned the witness about her long-term dislike of defendant, and the witness ultimately admitted that she had disliked defendant since 1979 and had hated him since at least 1982. Id.
After cross-examination, the prosecution moved the court for permission to question the witness about the 1982 incident. The trial court, reasoning that defense counsel had opened the door by attempting to show both bias and its cause, ruled that such questioning would be proper. Id. Consequently, on redirect, the witness testified that one reason for her dislike of defendant was that he sexually assaulted her in 1982. Id.
The Vermont Supreme Court upheld the trial court's decision allowing the rebuttal testimony, stating:
Defense counsel sought to impeach the credibility of complaining witness by painting an incomplete picture of unwarranted bias. The State's response was to complete this picture with appropriate detail.... [D]efense counsel attempted not only to demonstrate bias by the complaining witness but also attempted to provide a reason for the bias. Once the issue of why the complaining witness disliked the defendant was raised on cross-examination, it was proper for the state to present a complete picture for the jury (citations omitted). Thus, the trial court properly determined that defendant should not benefit from a selective presentation of the facts on cross-examination.
Id. 549 A.2d at 1386.
In U.S. v. Panebianco, 543 F.2d 447 (2d Cir.1976), the defendant asked for reversal because the jury heard testimony of threats made on the life of a witness (Mobley) by defendant. During direct, the prosecutor steered Mobley away from mentioning these threats; however, during cross examination, defense counsel tried to cast *850 doubt on Mobley's credibility by asking her in detail about her having set up her employer by planting heroin on him for the police to find. On redirect, the government was allowed, over objections, to clarify the matter by pointing out that Mobley had planted the heroin because defendant had threatened to kill her. Id. at 455. The Second Circuit Court of Appeals upheld the lower court's decision allowing the testimony on redirect, stating, "after ... counsel had attempted to impeach Mobley by harping on her having framed (her employer), the evidence of the threats served to rehabilitate the witness by supplying a justification for her actions at the time." Id. at 455. The court further stated:
[W]here cross-examination has been used to elicit an incomplete picture which gives a distorted impression of a witness' credibility, the prosecution should generally be allowed to set the record straight on redirect.
Id.
In U.S. v. Lerma, 657 F.2d 786 (5th Cir.1981), the Fifth Circuit Court of Appeals held that in a prosecution for drug offenses in which a prosecution witness testified that defendant was in possession of a gun at the time of his arrest, witness' opinion testimony that carrying a weapon violated state law was not reversible error where that opinion was elicited only after persistent cross-examination by defense counsel. The court stated:
Any error in the admissibility of statements concerning the legal consequences of carrying a gun was invited by his attorney's questioning. The accepted rule regarding statements procured in this manner is that "where the injection of allegedly inadmissible evidence is attributable to action of the defense, its introduction does not constitute reversible error." Having deliberately pursued a strategy that created a potential error at trial, (defendant) cannot seek relief from the untoward results of that strategy on appeal.
Id. at 788 (citations omitted).
Numerous other cases support the admissibility of G.C.'s testimony under the theory that the door was opened by appellant. In U.S. v. Whitworth, 856 F.2d 1268, 1285 (9th Cir.1988), the Ninth Circuit Court of Appeals stated:
Under the rule of curative admissibility, or the "opening the door" doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission.
In State v. Crawford, 619 S.W.2d 735, 740 (Mo.1981), the Missouri Supreme Court stated:
On redirect examination, it is proper to examine a witness on any matters which tend to refute, weaken or remove inferences, impressions, implications or suggestions which may have resulted from his testimony on cross examination, not withstanding the facts elicited may be prejudicial to the defendant.
(Citations omitted).
In Western Show Co. Inc. v. Mix, 315 Pa. 139, 173 A. 183, 184 (1934), the Pennsylvania Supreme Court stated:
"If irrelevant and collateral matter is elicited (by appellant), without objection, from plaintiff's witness on cross-examination, can the plaintiff rebut such collateral matter by the testimony of other witnesses?" Appellant can hardly be heard to raise this question. The injection by (appellant) of the "irrelevant and collateral matter" into the case left plaintiff but a single choice. It had either to offer no evidence in answer to it, and thereby risk its possible effect on the jury, which it had no way of measuring; or it could offer the rebutting evidence and take the risk of reversal because of the doctrine now advanced by appellant. No court of justice should put a litigant to such an alternative; rather, it should permit him, by means of contradictory evidence he had on hand, to rebut, as far as he could, the erroneous evidence elicited by his antagonist. Anything short of this would not even savor of fairness.
*851 In the instant case, appellant potentially discredited C.C.'s testimony by painting her and her husband as biased against appellant. C.C. was an important prosecution witness and one which the State could not afford to have discredited. The district court was therefore correct in allowing G.C.'s testimony to rehabilitate C.C. by demonstrating what his comments actually were. Furthermore, G.C.'s observation was, in and of itself, innocuous, compared to the testimony in cases cited above, most of which involved allegations of actual criminal conduct. The court should not apply a more stringent standard to child sexual abuse cases.
The State has argued that the testimony was admissible on other grounds which this court has rejected, but once appellant himself opened the door, the evidence was properly admitted. "Strange cattle having wandered through a gap made by himself, he cannot complain." Sisler v. Shaffer, 43 W.Va. 769, 28 S.E. 721, 721 (1897).
The appellant was not subject to double jeopardy. Although initially the prosecution moved for a mistrial, that motion was not granted. It was only after the defense moved for a mistrial that the court declared a mistrial. Thus, the entire reliance on Hylton v. District Court, 103 Nev. 418, 743 P.2d 622 (1987), is misplaced. When analyzing whether double jeopardy bars retrial, both the United States Supreme Court and this court have made a distinction between those cases in which the prosecution moves for mistrial and those in which the defense moves for mistrial or fails to object to the prosecution's motion for mistrial.
In Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1981), the United States Supreme Court stated:
Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard....
But in the case of a mistrial declared at the behest of the defendant, quite different principles come into play. Here, the defendant himself has elected to terminate the proceedings against him, and the "manifest necessity" standard has no place in the application of the Double Jeopardy Clause.
Id. at 672, 102 S.Ct. at 2088.
In Melchor-Gloria v. State, 99 Nev. 174, 178, 660 P.2d 109 (1983), this court stated that "(a)s a general rule, a defendant's motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution." The exception to this general rule is when the prosecutor intends to provoke a mistrial or otherwise engages in "overreaching" or "harassment," and where there is "intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." Id. at 178, 660 P.2d 109. In that case the double jeopardy bar will apply, despite the defendant's motion for, or "consent" to, the mistrial. Id. See also, Gaitor v. State, 106 Nev. 785, 801 P.2d 1372 (1990) (Double jeopardy bar did not apply because failure of defense counsel to object or express an opinion to the district court regarding the propriety of the mistrial implied consent and indicated tacit approval.); Collier v. State, 103 Nev. 563, 747 P.2d 225 (1987) (When defendant is granted a mistrial because of prosecutorial or judicial overreaching and the governmental conduct in question was intended to "goad" the defendant into moving for a mistrial, reprosecution will be barred.).
There is no evidence in this record that indicates that the prosecutor engaged in overreaching or harassment or that she intended to subvert the protections offered by the double jeopardy clause. It is understandable that this issue was not raised by the appellant on appeal. He had no cause to complain.
ROSE, Chief Justice, with whom SPRINGER, J., agrees, concurring in part and dissenting in part:
I concur with the majority opinion insofar as it reverses the judgment of conviction based upon the admission of evidence of the prior bad act. However, because I believe that the state violated appellant's right not to be placed twice in jeopardy for *852 the same offense, I dissent from that portion of the majority opinion which remands this matter to the district court.
The majority opinion concerns the second trial in this matter. The first began on February 11, 1991. After the jury was empaneled and opening statements were made, the victim's father approached two jurors. Juror Gesh spoke briefly with the victim's father, but did not discuss the case in any detail. Juror Youngblood saw the victim's father look at Youngblood as she was walking out the door. The victim's father did not say anything to Youngblood, but he looked at her "in a very different way" and he "came off in a fairly aggressive way, just by his looks."
The state requested a mistrial. Appellant opposed the motion. Youngblood stated that she did not think that her contact with the victim's father would affect her ability to go forward with the case and to render an impartial judgment. Gesh gave a similar statement. Eventually, after discussion with counsel, the district court concluded that Gesh would remain a juror and that the alternate would replace Youngblood. Appellant opposed the removal of Youngblood as a juror. The district court then permitted appellant to use his peremptory challenge against the alternate juror. The state informed appellant that he must either stipulate to an eleven-person jury or ask for a mistrial. After appellant refused to stipulate to the eleven-person jury, the district court declared a mistrial.
Although counsel failed to raise the double jeopardy issue, we may sua sponte raise issues of constitutional dimension. See Emmons v. State, 107 Nev. 53, 807 P.2d 718 (1991). In Hylton v. District Court, 103 Nev. 418, 743 P.2d 622 (1987), we stated:
A state may not put a defendant in jeopardy twice for the same offense. U.S. Const. amend. V; Nev. Const. art. 1, § 8. The double jeopardy clause of the fifth amendment directly applies to states under the due process clause of the fourteenth amendment.
As a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial. Retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, the defendant's valued right to have the trial concluded by a particular tribunal is sometimes subordinated to the public interest in affording the prosecutor one full and fair opportunity to present the state's evidence to an impartial jury.
The prosecutor has a heavy burden of justifying the mistrial in order to avoid the double jeopardy bar. The reviewing court must decide whether the declaration of a mistrial was dictated by "manifest necessity" or the "ends of public justice." There are degrees of necessity; the United States Supreme Court requires a "high degree" before concluding that a mistrial is appropriate.
The United States Supreme Court has consistently refused to pronounce general rules delineating when the manifest necessity standard has been met; each case must turn on its facts.
In analyzing the facts of this case to determine if double jeopardy bars further prosecution, this court must make a two-part inquiry. We must first decide whether declaration of the mistrial was dictated by manifest necessity or the ends of justice and, second, in the presence of manifest necessity, whether the prosecutor is responsible for the circumstances which necessitated declaration of a mistrial.
Id. at 421-23, 743 P.2d at 624-25 (citations and footnotes omitted).
The facts of this case do not support a finding of "manifest necessity" as discussed in Hylton. The state contemplated the possibility of a mistrial at the time it unnecessarily requested the replacement of Youngblood and Gesh as jurors. The district court's error in dismissing Youngblood *853 was compounded by the fact that the proper procedure for peremptory challenges of alternates was not followed. See NRS 175.061. After the state notified the district court that the parties had not been provided the opportunity to use their peremptory challenges prior to the impanelling of the jury, the district court allowed appellant to challenge the alternate juror. The state then informed the district court that appellant must either waive his right to a twelve-person jury or request the mistrial. A criminal defendant is not required to choose between his right to a trial by jury and his right not to be placed twice in jeopardy for the same offense.
The state has failed to meet its heavy burden of justifying the mistrial and thus may not avoid the double jeopardy bar. The declaration of a mistrial was not dictated by a manifest necessity. I would therefore reverse the judgment of conviction because the second trial in this matter was void as a violation of appellant's constitutional right not to be placed twice in jeopardy for the same offense.
SPRINGER, J., concurs.
NOTES
[1] Although some cases indicate that the terminology "doctrine of curative admissibility," "open door doctrine" and "invited error doctrine" are used interchangeably, the "curative admissibility" cases place more emphasis on the inadmissibility of the complaining party's evidence. Definitions of the "curative admissibility" doctrine usually are along these lines: "This doctrine provides that when one party introduces inadmissible evidence, with or without objection, the trial court may allow an adverse party to offer otherwise inadmissible evidence on the same subject if it is responsive to the evidence in question." Lala v. People's Bank & Trust Co. of Cedar Rapids, 420 N.W.2d 804, 807-08 (Iowa 1988), (emphasis supplied).