195 P.3d 864 (2008)
Reyes Murguia OLIVARES, Appellant,
v.
The STATE of Nevada, Respondent.
No. 46920.
Supreme Court of Nevada.
November 20, 2008.
*865 Philip J. Kohn, Public Defender, and Norman J. Reed and Nancy Lemcke, Deputy Public Defenders, Clark County, for Appellant.
Catherine Cortez Masto, Attorney General, Carson City; David J. Roger, District Attorney, and Giancarlo Pesci and Nancy A. Becker, Deputy District Attorneys, Clark County, for Respondent.
BEFORE THE COURT EN BANC.

OPINION
By the Court, CHERRY, J.:
Reyes Olivares was convicted of first-degree murder with the use of a deadly weapon. He now appeals that conviction on the basis that the district court erred when it refused to hold a hearing to consider doubts about Olivares' competency, instead proceeding to trial. Olivares argues that there was reasonable doubt regarding his competency and, as such, the district court abused its discretion when it did not hold a hearing after defense counsel raised serious doubts regarding Olivares' competency. We conclude that the district court abused its discretion and denied Olivares his due process rights by failing to hold a hearing to address the doubts raised as to Olivares' competency.[1]

FACTS
On June 27, 2002, Olivares drove to his construction work site, taking a 9-mm handgun with him. He testified that he carried the gun for protection from the construction foreman, Vaughn Russell, whom Olivares believed had made "black magic attacks" on him. At the construction site, Olivares approached Russell, believing that Russell intended to kill him. Olivares drew his gun and fired three shots at Russell, killing him. Olivares was arrested and charged with first-degree murder with the use of a deadly weapon.
Almost one month after the murder, Olivares appeared in district court for proceedings to address concerns about his competency that had been raised before the preliminary hearing in justice court. At defense counsel's request, the district court continued the matter in order for Olivares to seek further psychiatric evaluation because the court recognized that "[h]e might need some help at Lakes Crossing."[2] After a hearing on September 24, 2002, the district court sent Olivares to Lakes Crossing for a psychiatric evaluation to determine his competency to stand trial.
About seven months later, on April 15, 2003, the district court found Olivares competent to stand trial based on a report prepared by the doctors at Lakes Crossing. According to the report, two of the three doctors who examined Olivares at Lakes Crossing found him competent to stand trial. Neither defense counsel nor Olivares were present when the court made that determination.
Subsequently, Olivares appeared in the district court with defense counsel and asked *866 for additional time for psychiatrists to review reports on Olivares' competency. The district court granted Olivares 60 days.
After 60 days, Olivares refused to be transported to court for his status update. The court waived Olivares' presence. During the hearing, the subject of Olivares' competency was discussed. Specifically, defense counsel told the court that "[Olivares] does have serious mental issues." The court responded, "I know he does ... he's not thinking straight." The court reinforced that it previously had found Olivares competent to stand trial. At the conclusion of the hearing, the district court remanded the case to justice court for a preliminary hearing.
At the preliminary hearing, the justice court found probable cause and bound Olivares over to the district court for trial. Thereafter, on August 26, 2003, Olivares appeared in the district court for his arraignment. During the arraignment, the issue of Olivares' competency was again discussed. The district court acknowledged that "[t]here was some indication that [Olivares] had some psychiatric problems." Further acknowledging the lengthy delays in the case, the court said that "[its] hands are tied when [it] feel[s] there's some mental issue here." However, the court reiterated its prior finding that Olivares was competent and "for legal purposes ... capable of handling this case." Consequently, the district court observed that competency issues "might pop up again, but right now it's resolved." At the conclusion of the arraignment, the district court accepted Olivares' not guilty plea.
Approximately seven months after the arraignment, on March 18, 2004, the district court held a pretrial calendar call. At that time, the court questioned Olivares about several doctors' reports that stated that Olivares felt that his attorney was not doing enough for him. Olivares told the court that his attorney was "not acting on [his] defense."[3] The court told Olivares, "I don't think [your attorney is] out to get you or anything; do you understand that?" Olivares responded by asking the court to take his attorney off the case.
During the same calendar call, the court asked defense counsel for his view on Olivares' interactions with counsel. In response, defense counsel read an excerpt from the report of one of the doctors at Lakes Crossing, Dr. Brown, which explained Olivares' delusional system and how he viewed his counsel within that delusional system:
Mr. Olivares has incorporated his attorney into the persecutorial delusional system and it's his belief the public defender and district attorney are in collusion with one another to demonstrate him guilty. He has been unable to mentally process or understand the nature of the preliminary hearing and has only incorporated that further into a delusion that people wish him harm.
The court then asked defense counsel about another doctor's report[4] that detailed Olivares' belief that defense counsel sold his house and profited from the sale. Olivares told the court that he no longer believed defense counsel sold his house, only that he took his keys. Defense counsel informed the court of Dr. Lipson's conclusion that "[b]ased upon [Olivares'] delusions he's unable to work with counsel and cannot put on his own defense." At this point, defense counsel explicitly told the court that it was clear Olivares needed to be re-examined at Lakes Crossing.
The prosecutor acknowledged that he did not see what alternative the court had other than to remand Olivares to Lakes Crossing again. The prosecutor reasoned that "it's common sense that if [Olivares] believes that his attorney is in league with me and we are all working together to send him to prison, he's not going to be able to work with them." The prosecutor also told the court that the jail was not equipped to deal with the type of problems that Olivares suffered and therefore the court should remand Olivares to *867 Lakes Crossing for the "round-the-clock intensive treatment ... Mr. Olivares needs if he's ever going to achieve competence." The prosecutor reinforced to the court that "this is a problem that has existed from the start of the case and hasn't gone away yet." Finally, the court acceded to the prosecutor's unusual request to direct remarks to Olivares, and the prosecutor told Olivares that he was not in collusion with defense counsel. At the conclusion of the calendar call, the court referred Olivares to Lakes Crossing.
A year later, on March 24, 2005, counsel for Olivares appeared in district court for a status check. At the time, Olivares was still in the custody of Lakes Crossing. The court prefaced the hearing by indicating that two doctors had found Olivares to be "perfectly competent." The prosecutor responded that he did not "know if anybody says he's perfectly competent" and that two doctors had found Olivares to be competent "but all of his doctors say that he believes [defense counsel] is in a conspiracy with me to get him convicted, so that's a problem we're going to have to deal with when he gets here." The court then found Olivares competent over defense counsel's objection.
The next month, Olivares appeared in court after his return from Lakes Crossing. Defense counsel requested two weeks to consult with Olivares about a possible change in his plea. The district attorney did not object to the continuance, and the court granted the request.
Two weeks later, on April 27, 2005, Olivares moved to change his plea from not guilty to not guilty by reason of insanity. At that time, the district court again commented on the competency issue: "Mr. Olivares had some mental issues. I think they were resolved. I think I did declare him competent." Olivares then changed his plea to not guilty by reason of insanity, after the court asked him three times to clarify that he was changing his plea.
At the time set for trial on October 17, 2005, the State offered Olivares a plea deal. In exchange for a plea of guilty to second-degree murder, the State would agree to a sentence that would make Olivares eligible for parole after serving ten years. Olivares rejected the offer. The court questioned Olivares about his decision to reject the offer:
[Court]: You already decided what?
[Olivares]: To go to trial.
[Court]: Even [though] you can get out in seven years, less than seven years, you're eligible for parole?[5]
[Olivares]: That will be like if God wouldn't want me to be released.
Defense counsel told the court that he had issues regarding Olivares' competency because their conversations in the days before trial "revealed a lack of understanding of what the consequence would be of an Alford plea, a guilty plea, and not guilty by reason of insanity." At that time, defense counsel requested a full competency hearing based on his own conversations with Olivares after the State offered its plea deal. Olivares also objected to the use of Finger v. State[6] as the standard for legal insanity.[7] The court noted Olivares' objection to proceeding to trial and request for a full competency hearing, as well as Olivares' objection to the Finger standard, and proceeded to trial.
The jury found Olivares guilty and the district court sentenced him to serve 20 to 50 years in prison, plus an equal and consecutive term for the use of a deadly weapon. Olivares appeals and raises numerous issues, including error by the district court in failing to conduct a hearing regarding doubts as to Olivares' competency when defense counsel requested one immediately before the start of trial.

DISCUSSION
We now turn to the question of whether the district court erred in declining to hold a hearing to consider doubts about Olivares' competency, instead proceeding to trial. Olivares *868 argues that the district court abused its discretion in failing to hold a hearing because there was reasonable doubt regarding his competency. The State contends that the district court did not abuse its discretion in declining to hold a hearing because Olivares failed to present new evidence that would cast any doubt on Olivares' competence.
"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial."[8] An incompetent defendant is defined under NRS 178.400(2)(a) as one who does not have the present ability to understand either the nature of the criminal charges against him or the nature and purpose of the court proceedings, or is not able to aid and assist his counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding. If there is any doubt as to the competence of a defendant, the district court "shall suspend the proceedings, the trial or the pronouncing of the judgment, as the case may be, until the question of competence is determined."[9]
The Legislature has codified a procedure for determining competency to stand trial. When there is doubt as to a defendant's competence, NRS 178.415(1) requires the district court to "appoint two psychiatrists, two psychologists, or one psychiatrist and one psychologist, to examine the defendant." Thereafter, NRS 178.415(2) requires that the district court "receive the report of the examination" at "a hearing in open court" unless otherwise provided in the statutory provisions governing the procedures for inquiring into a defendant's competency. After receiving the report, the district court must, consistent with NRS 178.415(3), "permit counsel for both sides to examine the person or persons appointed to examine the defendant." That statute further provides that counsel for both sides may "[i]ntroduce other evidence" and "[c]ross-examine one another's witnesses." The court then "make[s] and enter[s] its finding of competence or incompetence."[10]
The United States Constitution and the Nevada Constitution compel a district court to hold a formal competency hearing when there is "substantial evidence" that the defendant may not be competent to stand trial.[11] "In this context, evidence is `substantial' if it `raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence.'"[12] A district court abuses its discretion and denies a defendant his right to due process when there is reasonable doubt regarding a defendant's competency and the district court fails to order a competency evaluation.[13]
In this case, counsel for Olivares informed the district court of doubts about Olivares' competence that arose from his initial arrest until the date set for trial. That is, at every opportunity, defense counsel informed the court of Olivares' inability to aid in his own defense. Furthermore, doctors' reports, coupled with the State's lack of objection and, at times, insistence that Olivares be remanded to Lakes Crossing, apprised the court that there were serious doubts regarding Olivares' competency. During the three years it took this case to proceed to trial, Olivares spent approximately half of that time at Lakes Crossing. Moreover, each time Olivares was returned from Lakes Crossing, at least one treating doctor found him incompetent to stand trial. Even the reports that declared Olivares competent also recognized that he included his attorney in *869 his delusions, believing that his attorneys were colluding with the court and the State in not helping him. And most significantly, defense counsel raised serious doubts about Olivares' competency when, on the eve of trial, Olivares rejected an offer to plead guilty to second-degree murder and receive ten years to life. Specifically, defense counsel informed the court that Olivares could not appreciate or process the negotiations. At that point, more than six months had passed since the last competency report and determination. The district court noted the concerns raised by counsel but proceeded to trial.
In these circumstances, when doubts have been raised as to a defendant's competency to stand trial, the district court has an obligation to hold a hearing to fully consider those doubts and to determine whether further competency proceedings under NRS 178.415 are warranted. In addition to the doubts that have been raised, the district court may consider all available information, including any prior competency reports and any new information calling the defendant's competency into question. Here, we conclude that it was an abuse of discretion for the district court to decline to hold a hearing to consider the doubts raised by counsel on the eve of trial concerning Olivares' competency and to determine whether further competency proceedings were necessary. Therefore, we reverse Olivares' conviction and remand for further proceedings and, if Olivares is found to be competent, a new trial.

CONCLUSION
The district court erred in failing to hold a hearing on the doubts raised by defense counsel, instead declaring Olivares competent and proceeding to trial. For the foregoing reasons, we reverse the judgment of conviction and remand this case to the district court to conduct a competency hearing and a new trial consistent with this opinion in the event that Olivares is found competent to stand trial.
We concur: GIBBONS, C.J., and MAUPIN, HARDESTY, PARRAGUIRRE, and SAITTA, JJ.
DOUGLAS, J., concurring:
I agree with the result reached by the majority. However, I write separately due to my belief that Dusky v. United States[1] is the more appropriate standard.
NOTES
[1] Olivares also alleges on appeal that the district court made the following errors: (1) violation of equal protection by applying the insanity standard under Finger v. State, 117 Nev. 548, 27 P.3d 66 (2001); (2) admission of testimony by the State's expert witness included inadmissible opinions on ultimate questions of law; (3) refusing to declare a mistrial after an expert witness referenced another shooting by Olivares; (4) refusing to allow individual sequestered voir dire of certain jury panelists; (5) admission of Olivares' statements to police; (6) admission of hearsay; (7) failure to instruct the jury on justifiable homicide and the appropriate burden of proof for insanity; and (8) failure to cure prosecutorial misconduct. Olivares further argues that cumulative error warrants reversal of his conviction and that the State presented insufficient evidence to support the jury's verdict. We conclude that these arguments need not be addressed in light of our decision to reverse the judgment of conviction on other grounds.
[2] Lake's Crossing Center is a mental health facility operated by the Division of Mental Health and Developmental Services of the Department of Health and Human Services that determines competency.
[3] Prior to this calendar call, Olivares repeatedly wrote to the court to tell the court that his attorney was not acting on his behalf and asking the court to remove his attorney. After receiving no response, Olivares decided that his attorney was in collusion with the court in not acting in his defense.
[4] Neither the court nor defense counsel identified the doctor who prepared the report.
[5] This was an instantaneous calculation by the district court because Olivares had already served almost three years at the time of trial.
[6] 117 Nev. 548, 27 P.3d 66.
[7] Specifically, Olivares urged the district court to overrule this court's holding in Finger.
[8] Medina v. California, 505 U.S. 437, 439, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992).
[9] NRS 178.405(1).
[10] NRS 178.415(4).
[11] Melchor-Gloria v. State, 99 Nev. 174, 180, 660 P.2d 109, 113 (1983); see U.S. Const. amend. XIV; Nev. Const. art. 1, § 8.
[12] Id. (quoting Moore v. United States, 464 F.2d 663, 666 (9th Cir.1972)).
[13] Morales v. State, 116 Nev. 19, 22, 992 P.2d 252, 254 (2000).
[1] 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).