135 Nev., Advance Opinion 17

# IN THE SUPREME COURT OF THE STATE OF NEVADA

RYAN MATTHEW LIPSITZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72057



FILED

JUN 06 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a guilty verdict, of indecent exposure, two counts of sexual assault, attempted sexual assault, battery with the intent to commit sexual assault, open or gross lewdness, and sexually motivated coercion. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

*Affirmed in part, reversed in part, and remanded with instructions.*

Terrence M. Jackson, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County,
for Respondent.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

 

By the Court, HARDESTY, J.:

Appellant Ryan Matthew Lipsitz was convicted of seven sexually related counts, including sexual assault and attempted sexual assault. He argues that the district court erred when it allowed the victim to testify by two-way audiovisual transmission, which violated his rights under the Confrontation Clause of the Sixth Amendment. We take this opportunity to adopt the test set forth in *Maryland v. Craig*, 497 U.S. 836, 850 (1990), to determine whether a witness's testimony at trial via two-way audiovisual transmission violates a defendant's right to confrontation. Under *Craig*, two-way video testimony may be admitted at trial in lieu of physical, in-court testimony only if (1) it "is necessary to further an important public policy," and (2) "the reliability of the testimony is otherwise assured." 497 U.S. at 850. Applying this test here, we conclude that the district court did not abuse its discretion in allowing the victim, who was admitted to an out-of-state residential treatment center, to testify by two-way audiovisual transmission at trial. First, the use of the audiovisual procedure was necessary to protect the victim's well-being, an important public policy goal, while also ensuring that the defendant was provided a speedy trial. And second, the audiovisual transmission procedure, as set forth in Supreme Court Rules Part IX-A(B), adequately ensured the reliability of the testimony, as it allowed Lipsitz to cross-examine the victim and the jury could hear and observe the victim.

Lipsitz also argues that the district court abused its discretion in proceeding to trial after the State expressed concerns about his competency. Based on the record before us, we conclude that the district

(O) 1947A

court did not abuse its discretion in proceeding to trial without holding a competency hearing.

Finally, Lipsitz argues that the district court erred in convicting him of both sexual assault and attempted sexual assault because they were based on the same underlying conduct. The State concedes this point and we agree. The State should have charged these counts in the alternative, but did not. The district court then compounded the error by convicting Lipsitz of both counts. As there was insufficient evidence for the sexual-assault conviction (count 2), we reverse that part of the judgment of conviction. We uphold the remaining convictions.

### FACTS AND PROCEDURAL BACKGROUND

Lipsitz trespassed into a residential treatment facility, where he sexually assaulted the victim, an 18-year-old patient seeking treatment for substance abuse and trauma related to her experience as a victim of sex trafficking. On the morning in question, the victim fell asleep while reading in the recreation room around 4 a.m. Approximately one hour later, the victim awoke to find Lipsitz, whom she had never seen before, standing at the end of the couch. Lipsitz exposed himself and forced the victim to have sex with him. Lipsitz then attempted to force the victim to perform fellatio on him, but her mouth was closed. And when he failed, he became upset, mumbled something under his breath, and walked away. Another patient and several staff members at the treatment center saw Lipsitz exiting the treatment center through the front gate. He was nearby the center when police officers found him.

Lipsitz was indicted and subsequently invoked his right to a speedy trial. The State moved to allow the victim to testify via simultaneous audiovisual transmission because she was unavailable as a witness for trial. Lipsitz opposed this motion, arguing that it was essential for the victim to

be physically present at trial as the case "rises and falls on the victim's credibility." The district court granted the State's motion, reasoning that the victim was unavailable as a witness for trial because she was a patient at an out-of-state treatment center. Moreover, the district court noted that Lipsitz invoked his right to a speedy trial, and he refused to agree to a continuance of the trial for her to be released from the facility. Therefore, the only way she could testify on the dates set for trial was by alternative means: deposition or audiovisual transmission.

During the same hearing, the State informed the district court that Lipsitz had been referred to competency court in a separate case pending in a different department. The district court asked Lipsitz's attorneys whether they had any concerns about his competency; they denied any concerns and urged the district court to proceed to trial. The district court engaged in a lengthy canvas of Lipsitz. At the conclusion of the hearing, the district court stated that it had no basis to doubt Lipsitz's competency because he "seem[ed] to have a clear understanding in terms of the facts [and] his discussion with his attorneys." The next day, the court reconsidered Lipsitz's competency after a sidebar with counsel. Lipsitz stated that he was unaware that he had been referred for a competency evaluation in the other case. The district court canvassed him again to ensure that he understood the charges and that he was able to communicate with and assist his attorneys in his defense. Satisfied with Lipsitz's responses, the district court proceeded to trial.

On the first day of trial, Lipsitz refused to change into a suit, which prompted the court to question his competency again. The district court asked him if he understood that remaining in his jail clothes might prejudice the jury against him, to which he responded "yes." Eventually,

Lipsitz agreed to put on a suit. The district court asked Lipsitz's counsel whether they still had no concerns about his competency. Lipsitz's counsel confirmed that they had no concerns and would inform the district court if that changed during the trial. The district court noted for the record that Lipsitz appeared competent.

After the district court impaneled the jury, Lipsitz engaged in an increasingly obstinate exchange with the district court, rebuking the justice system because the district court had allowed the victim to testify by audiovisual transmission and rebuffing his counsel. The district court explained that the use of audiovisual transmission would allow Lipsitz to confront the victim at trial. The court also explained that the victim had submitted "sufficient documentation that she medically cannot appear . . . . So I mean if we're going forward today, we're going to be going forward with audio/video technology." The court further explained that it approved the use of audiovisual transmission for the victim's testimony, in part, because Lipsitz had invoked his right to a speedy trial.

This angered Lipsitz. It appeared that he misunderstood how the audiovisual technology worked; he thought that the victim's testimony was a prerecording from YouTube. Lipsitz reasserted his lack of confidence in the judge and the trial proceedings. He then waived his right to appear at trial, and the district court ordered his removal from the courtroom.

At trial, the jury heard testimony from several witnesses: the victim who described the sexual assault in detail; several staff members and another patient from the treatment center who saw Lipsitz in and around the building; the sexual assault nurse examiner who treated the victim after the sexual assault; forensic scientists who processed DNA collections from both the victim and Lipsitz; and the police officers who responded to the

scene and arrested Lipsitz. The DNA testing revealed Lipsitz's saliva on the victim's mandible, neck, and chest. There was no evidence of sperm or semen from the victim's vaginal and external genitalia and no sperm on Lipsitz's penis or hands. There was also no DNA from the victim on Lipsitz's hands.

After the six-day trial, the jury returned a guilty verdict on all counts except for one count of sexual assault. The district court sentenced Lipsitz to an aggregate sentence of 20 years to life.

## DISCUSSION

Lipsitz argues that reversal is warranted because (1) the district court abused its discretion in not suspending proceedings after the State raised concerns about Lipsitz's competency to stand trial; (2) the district court erred in allowing the victim to testify via simultaneous audiovisual transmission from the Florida treatment center where she was a patient, depriving Lipsitz of his Sixth Amendment right under the Confrontation Clause; and (3) the district court erred by convicting Lipsitz of both sexual assault (count 2) and attempted sexual assault (count 3) when the charges stemmed from the same incident.

*The district court did not abuse its discretion in proceeding to trial after the State expressed concerns about Lipsitz's competency*

Lipsitz argues that the district court was required to halt the trial proceedings and order a competency evaluation after the State expressed concerns about Lipsitz's competency. We review a district court's refusal to order a competency evaluation for an abuse of discretion. *Olivares v. State*, 124 Nev. 1142, 1148, 195 P.3d 864, 868 (2008).

The Due Process Clause of the Fourteenth Amendment provides that a criminal defendant may not be prosecuted if he or she lacks competence to stand trial. *Id.* at 1147, 195 P.3d at 868. An incompetent

defendant is one who lacks "the present ability to understand either the nature of the criminal charges against him or the nature and purpose of the court proceedings, or is not able to aid and assist his counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding." *Id.*; *see also* NRS 178.400(2)(a)-(c). "[I]f doubt arises as to the competence of the defendant, the court shall suspend the proceedings . . . until the question of competence is determined." NRS 178.405(1). "Whether such a doubt is raised is within the discretion of the trial court," *Melchor-Gloria v. State*, 99 Nev. 174, 180, 660 P.2d 109, 113 (1983), but when the district court receives "substantial evidence that the defendant may not be competent to stand trial," the court must hold a formal competency hearing, *Olivares*, 124 Nev. at 1148, 195 P.3d at 868 (internal quotation marks omitted).

Our review of the record demonstrates that the district court did not abuse its discretion in proceeding to trial because substantial evidence showed that Lipsitz was competent for trial. The district court conducted an independent assessment of Lipsitz's competency, canvassing him and his counsel, who assured the district court that Lipsitz was competent and requested to proceed to trial.[1] The court relied on defense counsel's assurances, its own interactions with Lipsitz, and his responses to

---

[1]The State informed the district court that Lipsitz had been referred to competency court in another department, but there is nothing in the record confirming that the other department made a competency determination. We note that NRS 178.405(2) requires that once a department suspends proceedings pending a competency hearing, it must provide written notice to all other departments. Nothing in the record shows that the other department actually suspended its proceedings or provided written notice to the district court that Lipsitz was not competent, and the parties did not make any argument on this point.

the court's canvass in arriving at its determination that a competency hearing was not warranted. Lipsitz's behavior, while obstinate, did not show a lack of understanding or inability to aid in his defense. Rather, the record shows that Lipsitz was unwilling to aid in his defense. Lipsitz became frustrated because he was not privy to the grand jury proceedings, he was dissatisfied with his public defenders, and he was angry that the victim would be testifying through audiovisual transmission instead of appearing in person. On this record, we cannot conclude that the district court abused its discretion when it proceeded to trial after canvassing Lipsitz and concluding that there was not enough evidence to create doubt as to his competency. *See Olivares*, 124 Nev. at 1148, 195 P.3d at 868; *Melchor-Gloria*, 99 Nev. at 180, 660 P.2d at 113.

*Allowing the victim to testify via simultaneous audiovisual transmission, pursuant to the procedure set forth in Nevada Supreme Court Rules Part IX-A(B), did not violate Lipsitz's rights under the Confrontation Clause*

Lipsitz contends that it was a violation of his rights under the Confrontation Clause for the district court to allow the victim to testify by two-way audiovisual transmission and that the district court forced him to choose between his right to a speedy trial and his right to confront his accuser. Whether an evidentiary ruling violated the defendant's rights under the Confrontation Clause is a question of law we review de novo. *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009).

The Sixth Amendment's Confrontation Clause provides criminal defendants the right to confront the "witnesses against [them]" and to cross-examine such witnesses who "bear testimony" against them. *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (internal quotation marks and citation omitted). The elements that comprise the right of confrontation, i.e., "physical presence, oath, cross-examination, and

observation of demeanor by the trier of fact," ensure "the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990). However, the right to a witness's physical presence at trial is not absolute. As the United States Supreme Court explained in *Craig*, "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial," but that preference "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849 (internal quotation marks and citation omitted). The Supreme Court held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850. At issue in *Craig* was a state statute that allowed child witnesses to testify via a one-way closed-circuit television in child abuse cases. The Supreme Court concluded that the use of the one-way closed-circuit television procedure did not violate the defendant's right to confrontation because (1) it was necessary to further the State's interest in protecting the child victim from emotional trauma that the child would suffer by having to testify in the defendant's presence, and (2) the procedure adequately preserved the other elements of confrontation, thereby providing indicia of reliability. *Id.* at 851-57. The Supreme Court emphasized that the procedure could be used only after the trial court hears evidence and makes a case-specific finding that the procedure is "necessary to further an important state interest." *Id.* at 852-55.

*Craig* involved one-way video transmission and did not answer whether the same standard would apply to two-way video transmission,

whereby the defendant and the victim can see and hear each other simultaneously. *See Wrotten v. New York*, 560 U.S. 959, 959 (2010) (explaining that whether the use of two-way video transmission violated a defendant's rights was an important question that was "not obviously answered by *Maryland v. Craig*"). Nonetheless, many other jurisdictions that have addressed this issue have allowed the use of two-way transmission only where the *Craig* standard is met. *See, e.g., United States v. Carter*, 907 F.3d 1199, 1206 (9th Cir. 2018); *United States v. Yates*, 438 F.3d 1307, 1313-17 (11th Cir. 2006); *United States v. Bordeaux*, 400 F.3d 548, 554-55 (8th Cir. 2005); *State v. Rogerson*, 855 N.W.2d 495, 504-06 (Iowa 2014); *White v. State*, 116 A.3d 520, 544 (Md. Ct. Spec. App. 2015). We likewise agree that the requirements articulated in *Craig* apply to two-way audiovisual transmission.

Applying the *Craig* test to the two-way technology used here, we conclude that the district court did not abuse its discretion in allowing the victim to testify by audiovisual transmission. First, the district court made the requisite finding of necessity. There is no dispute that the victim in this case was a patient at a residential drug treatment facility in Florida, and the victim's doctor opined that she "w[ould] not be available for a number of months." Admission into a treatment center for a prolonged period is a legitimate basis for the district court to find that a witness is medically unavailable to appear at trial. *Cf. Horn v. Quarterman*, 508 F.3d 306, 317-18 (5th Cir. 2007) (allowing two-way video testimony of a witness too ill to travel); *United States v. Gigante*, 166 F.3d 75, 81-82 (2d Cir. 1999) (same); *People v. Wrotten*, 923 N.E.2d 1099, 1101, 1103 (N.Y. 2009) (same). Additionally, Lipsitz's insistence on a speedy trial and his refusal to continue the trial until the victim was released from the treatment facility

contributed to the district court's decision to grant the State's motion to allow the victim to testify remotely at trial. The district court explained that because Lipsitz had invoked "his right to go to trial next week, then it seem[ed] . . . that [the victim] is essentially unavailable, which would allow for either a deposition to be taken of the witness or use in this case of the audiovisual technology." Thus, absent this form of technology, the victim could not have appeared for the trial scheduled the following week. As a result, we conclude that use of the technology under these circumstances furthered the important public policy of protecting the victim's well-being while also protecting the defendant's right to a speedy trial while ensuring that criminal cases are resolved promptly.

Second, the use of two-way audiovisual transmission, as set forth in Nevada Supreme Court Rules Part IX-A(B), provides indicia of reliability by satisfying the elements of confrontation enunciated in *Craig*. It allows the witness to swear under oath, the defendant can cross-examine the witness, and the court and jury have the ability to observe the witness's demeanor and judge her credibility. The victim-witness here complied with these elements. She swore to tell the truth, the defense cross-examined her, and the judge and jury had an opportunity to observe her demeanor and judge her credibility. The district court noted for the record that the video worked better than in-court testimony because the jury was better able to observe her demeanor, she answered all the questions, the audio was clear, both parties had a chance to question her, and there was nothing to preclude the defendant from testing her credibility. The technology sufficiently provided Lipsitz an opportunity to confront the victim.

Accordingly, we conclude that the district court did not abuse its discretion in allowing the victim to testify by two-way audiovisual

transmission. The technology allowed Lipsitz to confront the victim when she would have otherwise been unavailable, public policy supports the use of this technology to protect a victim's well-being while also ensuring that a defendant has a speedy trial, and the procedure for this modern technology satisfies the elements of confrontation.

*Lipsitz's conviction for both sexual assault and attempted sexual assault based on the same conduct was error, and there was insufficient evidence to uphold the sexual assault charge*

Lipsitz argues that the district court erred in adjudicating him of both sexual assault (count 2) and attempted sexual assault (count 3) because both charges stemmed from a single act—touching his penis to the victim's closed mouth—and he could not be convicted of both attempting and completing the same act. Lipsitz argues that we should vacate the sexual assault charge because there was no penetration and the conduct therefore amounted only to an attempted sexual assault. The State concedes that both convictions cannot stand. It contends that the conviction for sexual assault is valid because the definition of sexual assault by fellatio, as presented to the jury in jury instructions, allowed a touching to be sufficient for assault if there is "oral stimulation of the penis for sexual satisfaction." We agree that both convictions cannot stand as they were based on the same underlying conduct. The State should have charged counts 2 and 3 in the alternative, but it failed to do so. Accordingly, we review to determine whether there was sufficient evidence to support a conviction for the greater of the two charges, sexual assault. Under a sufficiency of evidence standard of review, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319

(1979); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).

NRS 200.366(1)(a) defines sexual assault as "subject[ing] another person to sexual penetration." NRS 200.364(9), as relevant here, defines "'[s]exual penetration'" as "fellatio, or any intrusion, however slight, of any part of a person's body." Further, "to prove attempted sexual assault, the prosecution must establish that (1) [the defendant] intended to commit sexual assault; (2) [the defendant] performed some act toward the commission of the crime; and (3) [the defendant] failed to consummate its commission." *Van Bell v. State*, 105 Nev. 352, 354, 775 P.2d 1273, 1274 (1989) (citing NRS 193.330); *see also Crawford v. State*, 107 Nev. 345, 351, 811 P.2d 67, 71 (1991) (explaining that the element requiring that the actor fail to complete the crime in an attempt crime precludes the conviction for the completed crime for the same conduct). Thus, for the sexual assault conviction to stand, there must have been sufficient evidence that Lipsitz consummated the act of fellatio.

In *Maes v. Sheriff*, we explained that fellatio does not require penetration. 94 Nev. 715, 716, 582 P.2d 793, 794 (1978). Instead, fellatio is "the practice of obtaining sexual satisfaction by oral stimulation of the penis." *Id.* (quoting *Webster's Third New International Dictionary* (Unabridged, 1968)). In *Maes*, this court concluded that the State met its burden of proving that the defendant sexually assaulted the victim by licking the victim's penis because there was oral stimulation, despite the absence of an intrusion. *Id.*

Here, the victim testified that there was no penetration: "His penis touched the tip of my mouth but my mouth was not open." And when asked how many times Lipsitz's penis touched her lips, the victim

responded, "[j]ust once." A single touching of the defendant's penis to the victim's closed lips is insufficient to demonstrate oral stimulation of the penis and does not meet the definition of fellatio. *See id.* Instead, it is an attempted and failed sexual assault. *Crawford*, 107 Nev. at 351, 811 P.2d at 71. Therefore, we conclude that there was insufficient evidence to sustain the conviction for sexual assault, and we vacate the conviction for sexual assault (count 2) and remand the case to the district court with instructions to amend the judgment of conviction consistent with this opinion.[2]

## CONCLUSION

Based on the foregoing, we conclude that the district court did not abuse its discretion in proceeding to trial after canvassing Lipsitz and his counsel and determining that there was no doubt as to his competency.

---

[2]We have considered Lipsitz's other claims of error and conclude that they lack merit. While he argues that there was insufficient evidence to convict him on all other counts, he fails to challenge a specific count and articulate how there was insufficient evidence to support a conviction. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). As to his constitutional challenge to NRS 50.700—the statutory prohibition on court-ordered psychological evaluations of victims of sexual assault—the record shows that Lipsitz never sought an examination, a point he concedes on appeal. He cannot therefore argue that the district court erred in denying him the examination. Nor does he argue that the district court erred in failing to sua sponte order an evaluation. Accordingly, we conclude that he has waived this claim on appeal, and we decline to reach its merits. *See Blankenship v. State*, 132 Nev. 500, 505 n.2, 375 P.3d 407, 411 n.2 (2016) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal." (quoting *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981))). Finally, as to his claim that the cumulative effect of errors at trial warrants reversal, we have found only one error—his conviction for sexual assault (count 2)—and thus there are no errors to cumulate.

SUPREME COURT
OF
NEVADA

(O) 1947A

The court likewise did not abuse its discretion in allowing the victim to testify via two-way audiovisual transmission because this technology satisfied the Confrontation Clause's requirements, as stated in *Maryland v. Craig*, 497 U.S. 836, 850 (1990). We further conclude that Lipsitz could not be convicted of both sexual assault and attempted sexual assault for the same act, and there was insufficient evidence to support the conviction for sexual assault (count 2). Accordingly, we reverse Lipsitz's conviction for count 2 and remand this matter to the district court with instructions to amend the judgment of conviction consistent with this opinion. We affirm Lipsitz's judgment of conviction on all other grounds.

_____, J.
Hardesty

We concur:

_____, J.
Stiglich

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A