# IN THE SUPREME COURT OF THE STATE OF NEVADA

COLEMAN JEFFERSON VAOGA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 74285

FILED

SEP 27 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Jennifer P. Togliatti, Judge.

Appellant Coleman Vaoga was arrested and charged for the murder of a man attempting to steal from his truck. On December 6, 2014, Vaoga followed Jeffrey Clabaugh, the victim, from a gas station parking lot to a neighboring desert area after he saw Clabaugh rummaging through his truck. Vaoga brought a metal pipe from his truck. Vaoga ultimately murdered Clabaugh with a boulder. Multiple witnesses saw Vaoga enter the desert area, and heard screaming and the beating.

Vaoga pleaded not guilty at his initial arraignment and a trial date was set. From that hearing, it appeared to counsel as though Vaoga did not understand the charges against him. Counsel moved to vacate the trial date so that Vaoga could be evaluated for his competency to stand trial. The district court agreed to vacate the trial date and ordered that Vaoga undergo a competency evaluation at Lake's Crossing.

Two doctors assessed Vaoga and found him to be competent. One of the doctors noted that Vaoga was uncooperative with all three commitment evaluators and concluded that his lack of cooperation was

19-40267

likely volitional. She opined further that he was intentionally embellishing his symptoms. Another doctor opined that Vaoga's experience with the criminal justice system allowed him to attempt to manipulate it by feigning mental illness. As a result of the evaluations, the district court found Vaoga was competent to stand trial. However, counsel still expressed concerns about his competency after Vaoga told him that he believed the charges had been dismissed.

Vaoga requested an ex parte hearing under *Young v. State*, 120 Nev. 963, 102 P.3d 572 (2004), to request new counsel. At the hearing, counsel reiterated her concerns about Vaoga's competency. Vaoga indicated to the court that he would cooperate and the district court denied the request.

Vaoga again requested an ex parte *Young* hearing. Counsel again expressed concerns about Vaoga's competency because Vaoga still believed his case was dismissed, and verbalized irrational rantings regarding space aliens.

The court ordered Vaoga to undergo a second evaluation where he was again deemed competent and to be embellishing a delusional disorder. Two doctors submitted detailed reports that were consistent with the first set of evaluations. One of the doctors opined that Vaoga had intentionally refused to communicate with his attorneys.

Vaoga's lack of cooperation with counsel continued. At several pretrial status-check hearings, counsel advised the district court that Vaoga was not cooperating and refusing to be transported to court. The district court had a third *Young* hearing and determined that Vaoga was manipulating the system and malingering. The district court also

SUPREME COURT
OF
NEVADA

(O) 1947A

2

determined that there was no conflict between Vaoga and counsel, so removal of Vaoga's counsel was unwarranted.

Vaoga filed a pretrial motion to suppress autopsy photographs of Clabaugh, and asked the court to defer ruling on the motion until the exhibits were marked at trial. The district court heard arguments and testimony from the parties about the photographs. At a hearing outside the presence of the jury, Dr. Alane Olson, a medical examiner, testified that the photographs were important to show injuries on different parts of Clabaugh's body. The district court admitted the photographs, finding they were more probative than prejudicial.

At trial, counsel conceded that Vaoga killed Clabaugh, but argued that he did not act with the requisite intent for first-degree murder. The jury found Vaoga guilty of first-degree murder with the use of a deadly weapon. During the penalty phase, Vaoga claimed Clabaugh was not dead, but instead was injected with something and made to look dead. He also continued to assert that his case was dismissed. Counsel advised the district court he was not challenging competency. Vaoga was sentenced to life without the possibility of parole with a consecutive prison term of 36 to 120 months for the deadly weapon enhancement.

On appeal, Vaoga challenges the district court's failure to hold a competency hearing prior to both the guilt and penalty phases of trial, the district court's denial of Vaoga's final request to substitute counsel, the district court's admission of nine autopsy photographs of the victim at trial, the district court's admission of certain evidence during the penalty phase, and the prosecutor's conduct.

Vaoga contends that the district court abused its discretion by failing to hold competency hearings prior to both the guilty and penalty

phases at trial. NRS 178.400(1) provides that "[a] person may not be tried or adjudged to punishment for a public offense while incompetent." A person is "incompetent" if they do "not have the present ability to: (a) [u]nderstand the nature of the criminal charges against the person; (b) [u]nderstand the nature and purpose of the court proceedings; or (c) [a]id and assist the person's counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding." NRS 178.400(2). "Where there is reasonable doubt regarding a defendant's competency, a district court's failure to order a competency evaluation constitutes an abuse of discretion and a denial of due process." *Morales v. State*, 116 Nev. 19, 22, 992 P.2d 252, 254 (2000). When determining whether to order a competency hearing, "[i]n addition to the doubts that have been raised, the district court may consider all available information, including any prior competency reports and any new information calling the defendant's competency into question." *Olivares v. State*, 124 Nev. 1142, 1149, 195 P.3d 864, 869 (2008).

The district court ordered two separate competency evaluations and the results indicated that Vaoga was able to understand the nature of the charges against him, and if he so chose, could have aided in his defense. It did not order a third competency hearing prior to the guilt and sentencing phases of trial. While Vaoga relies on our ruling in *Olivares*, it is distinguishable from the present case: there, at least one treating doctor found the defendant incompetent to stand trial. Conversely, all of the evaluating doctors found Vaoga competent to stand trial, and doctors determined that he was exaggerating his symptoms and choosing to act incompetent. *See id.* at 1148-49, 195 P.3d at 868-69 (concluding that the district court abused its discretion by declining to conduct a competency

hearing when considerable doubt as to defendant's competency had been raised and defendant had at least one doctor determine he was incompetent each time he was evaluated). We therefore conclude that the district court did not abuse its discretion in denying Vaoga's request for a competency hearing because there was no reasonable doubt regarding his competency.

We next address whether the district court's denial of Vaoga's motion to substitute counsel was an abuse of discretion. *Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 843 (2005) ("We review the district court's denial of a motion to substitute counsel for an abuse of discretion."), *modified on other grounds by Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006). In determining whether a district court abused its discretion, we consider three factors: "(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion." *Young*, 120 Nev. at 968, 102 P.3d at 576 (quoting *United States. v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)).

Vaoga's refusal to cooperate was insufficient grounds for the district court to substitute counsel. *See Thomas v. State*, 94 Nev. 605, 608, 584 P.2d 674, 676 (1978) ("A defendant cannot base a claim of inadequate representation upon his refusal to cooperate with appointed counsel." (internal quotation marks omitted)). "The mere loss of confidence in [a defendant's] appointed counsel does not establish 'good cause.'" *Gallego v. State*, 117 Nev. 348, 363, 23 P.3d 227, 237 (2001) (internal quotation marks omitted), *abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 263 P.3d 235 (2011). Vaoga's competency evaluation reports noted that his refusal to cooperate was part of his strategy to avoid prosecution. Simply, Vaoga failed to demonstrate a conflict existed between him and his counsel. *See Garcia*, 121 Nev. at 337, 113 P.3d at 842 (determining that "[a]bsent a

showing of sufficient cause, a defendant is not entitled to the substitution of court-appointed counsel at public expense"). Further, even if Vaoga's intentional disruptions resulted in a breakdown in communication between himself and counsel, we conclude that it did not "lead . . . to an apparently unjust verdict." *Gallego*, 117 Nev. at 363, 23 P.3d at 237 (internal quotation marks omitted).

We also conclude that the district court adequately inquired into Vaoga's rationale for wanting to dismiss counsel and reasonably determined that he was intentionally acting confused and not being responsive. *See Garcia*, 121 Nev. at 337, 113 P.3d at 842 ("[T]he [district] court may not summarily deny [a] motion [to substitute counsel] but must adequately inquire into the defendant's grounds for it." (second alteration in original) (internal quotation marks omitted)). After asking Vaoga a number of questions about counsel's representation, the district court concluded that Vaoga was intentionally changing topics and malingering. We conclude that the district court adequately inquired into Vaoga's rationale for wanting to replace counsel.

In evaluating the timeliness of a request to substitute counsel, we must "balanc[e] a defendant's constitutional right to counsel against the inconvenience and delay that would result from the substitution of counsel." *Young*, 120 Nev. at 969-70, 102 P.3d at 577. Although Vaoga made three previous requests to substitute counsel, he does not challenge the district court's rulings as to those requests; instead, he only challenges the denial of his final request which was made one week prior to the start of trial and would have effectively caused an unnecessary delay.

Weighing all the *Young* factors, we conclude that no irreconcilable conflict existed between Vaoga and counsel, that the district

court adequately inquired into Vaoga's reasons for wanting to substitute counsel, and his final request to substitute counsel was untimely. Thus, the district court did not abuse its discretion in denying Vaoga's final request to substitute counsel.

Next, Vaoga contends that the district court abused its discretion by admitting the autopsy photos at trial. Generally, all relevant evidence is admissible, unless "its probative value is substantially outweighed by the danger of unfair prejudice." NRS 48.025; NRS 48.035(1). Gruesome photographic evidence is admissible "to show the cause of death and . . . the severity of wounds and the manner of their infliction." *Browne v. State*, 113 Nev. 305, 314, 933 P.2d 187, 192 (1997) (internal quotation marks omitted). "The admissibility of gruesome photographs showing wounds on the victim's body 'lies within the sound discretion of the district court and, absent an abuse of that discretion, the decision will not be overturned.'" *Flores v. State*, 121 Nev. 706, 722, 120 P.3d 1170, 1180 (2005) (quoting *Turpen v. State*, 94 Nev. 576, 577, 583 P.2d 1083, 1084 (1978)).

Before evaluating the relevance of the autopsy photographs compared to their risk of unfair prejudice, it is important to note the severity of Vaoga's actions and the damage those actions inflicted on the victim's body. Vaoga brutally beat the victim with a metal pipe and then killed him by crushing his skull with a boulder. A medical examiner testified that the photographs were necessary to describe the nature of Clabaugh's injuries, and the extent to which they damaged the victim's body. Numerous photographs revealed distinctive contusions, and others exposed the severity of the injuries. The medical examiner testified that one photograph, specifically, was crucial to illustrate the force utilized to rupture Clabaugh's eyeball, which the other photographs could not depict.

While some of these photographs may have been duplicative, we conclude that the district court's due diligence in vetting the photographs, and its careful consideration of the State's rationale, demonstrate that it did not abuse its discretion in admitting them. *See Browne*, 113 Nev. at 314, 933 P.2d at 192 (stating that "gruesome photos will be admitted if they aid in ascertaining the truth").

Next, Vaoga contends that the State engaged in several instances of prosecutorial misconduct. In reviewing claims of prosecutorial misconduct, we first "determine whether the prosecutor's conduct was improper," and if so, "whether the improper conduct warrants reversal." *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). "If the error is of constitutional dimension," we "will reverse unless the State demonstrates, beyond a reasonable doubt, that the error did not contribute to the verdict." *Id.* at 1189, 196 P.3d at 476. "If the error is not of constitutional dimension, we will reverse only if the error substantially affects the jury's verdict." *Id.* "Prosecutorial misconduct may . . . be of a constitutional dimension if, in light of the proceedings as a whole, the misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 1189, 196 P.3d at 477 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted)). However, reversal is not warranted if the prosecutorial misconduct is harmless beyond a reasonable doubt. *Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005). "[F]ailure to object precludes appellate review of the matter unless it rises to the level of plain error." *Id.* Plain error is that which is "'plain' or clear, and . . . affected the defendant's substantial rights." *Id.* (internal quotation marks omitted). "For objected-to and admonished misconduct, a party moving for a new trial bears the

burden of demonstrating that the misconduct is so extreme that the objection and admonishment could not remove the misconduct's effect." *Lioce v. Cohen*, 124 Nev. 1, 17, 174 P.3d 970, 981 (2008).

Vaoga challenges six instances of alleged prosecutorial misconduct, some of which he objected to at trial and others of which he did not. First, Vaoga claims that it was improper for the prosecutor to state during rebuttal that he would "bring [the jury] back to reality now" after Vaoga's closing argument. Vaoga did not object, so we review for plain error. Because Vaoga has not established that the error was clear and failed to demonstrate that his substantial rights were affected, we conclude that this statement does not amount to reversible plain error. *See Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018).

Second, Vaoga claims that it was improper for the prosecutor to state that defense counsel "glossed over" part of the jury instructions. Vaoga preserved this objection. However, we conclude that, even if the comment was improper, it was "harmless beyond a reasonable doubt" as it was "passing in nature" and there was overwhelming evidence of Vaoga's guilt based on eye-witness testimony. *See Anderson*, 121 Nev. at 516, 118 P.3d at 187.

Third, Vaoga claims that the prosecutor improperly argued facts not in evidence. During rebuttal closing argument, the prosecutor suggested that a detective's statement that he did not think Vaoga was a cold blooded killer was an interview technique, when there was never testimony as to the mindset of the interviewer. Vaoga objected below. We conclude that the prosecutor's comment was not improper. "Prosecutors must be free to express their perceptions of the record, evidence, and inferences, properly drawn therefrom." *Moore v. State*, 116 Nev. 302, 306,

997 P.2d 793, 795 (2000). The prosecutor's perception that the detective was utilizing an interview technique was a reasonable inference from the evidence and, when viewed in context, did not unfairly affect the trial. As such, Vaoga failed to demonstrate that this comment "substantially affect[ed] the jury's verdict." *Valdez*, 124 Nev. at 1189, 196 P.3d at 476.

Fourth, Vaoga claims that it was improper for the prosecutor to state that rocks were the original deadly weapon and opine about voluntary manslaughter during the State's closing argument. Vaoga did not object at trial. The prosecutor gave an example of manslaughter that was a reasonable inference. Therefore, we conclude that Vaoga's rights were not substantially affected because a prosecutor is permitted to argue reasonable "inferences from the evidence" presented at trial. *Truesdell v. State*, 129 Nev. 194, 203, 304 P.3d 396, 402 (2013).

Fifth, Vaoga challenges the State's attribution of statements to witnesses who never testified. The statements in question were allegedly made by witnesses who saw Vaoga running after the victim. The witnesses allegedly told Vaoga it was not worth killing Clabaugh. Vaoga failed to object below. Counsel admitted that Vaoga killed Clabaugh at the beginning of trial, therefore, the error was harmless beyond a reasonable doubt. *See Anderson*, 121 Nev. at 516, 118 P.3d at 187 (internal quotation marks omitted).

Sixth, Vaoga challenges the prosecutor's description of a heat of passion crime as one requiring no time to subside between the triggering event and the crime. Vaoga objected at trial. While the objection was overruled, the State clarified its statement immediately after the district court overruled the objection. As such, Vaoga has not shown "actual

prejudice or a miscarriage of justice," therefore, none of Vaoga's claims for prosecutorial misconduct warrant reversal. *See id.*

Finally, Vaoga claims that the district court abused its discretion by admitting certain evidence in the penalty phase of the trial. "The decision to admit particular evidence during the penalty phase is within the sound discretion of the district court and will not be disturbed absent an abuse of that discretion." *McConnell v. State*, 120 Nev. 1043, 1057, 102 P.3d 606, 616 (2004) (internal quotation marks omitted).

At the penalty phase, the State presented victim-impact testimony from the victim's two daughters and his estranged wife. It also presented evidence of Vaoga's four prior felony convictions. One of which, the State mistakenly referred to the current murder as occurring in 2004 instead of 2014. Vaoga did not object contemporaneously. We conclude that the district court did not abuse its discretion in admitting the misstatement. Viewed in context, it is clear that the State was referring to the murder of Clabaugh, for which Vaoga had just been convicted, not a prior conviction for murder.

For the reasons set forth above, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:     Hon. Jennifer P. Togliatti, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk