# IN THE SUPREME COURT OF THE STATE OF NEVADA

JONATHAN WAYNE BLAYLOCK,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78182

FILED

APR 16 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This in an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of trafficking in a controlled substance, one count of offering or attempting to sell a controlled substance, and one count of sale of a controlled substance.[1] Eighth Judicial District Court, Clark County; Judge William D. Kephart. Appellant Jonathan Blaylock raises four main contentions on appeal.

First, Blaylock argues that the district court erred in denying his fair-cross-section challenge without hearing testimony from the jury commissioner. We disagree. The burden of demonstrating a prima facie violation of the fair-cross-section requirement rested with Blaylock to show (1) that the group allegedly excluded is "distinctive"; (2) that the representation of that group in the venire was not fair and reasonable in relation to the number of such people in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the selection process. *Evans v. State*, 112 Nev. 1172, 1186, 926 P.2d 265, 275

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

20-14487

(1996). Blaylock alleged that the venire did not represent the aggregate percentage of Hispanics/Latinos[2] in the community, but he did not allege that the underrepresentation was due to systematic exclusion in the jury selection process, beyond merely pointing out that there were no Hispanic/Latinos on the venire and speculating as to how to "figure out more about how people are systematically excluded."[3] As Blaylock did not allege sufficient facts to warrant further inquiry, the district court did not err in denying the fair-cross-section challenge without conducting an evidentiary hearing. *See id.; Valentine v. State*, 135 Nev., Adv. Op. 62, 454 P.3d 709, 714 (2019) (concluding that an evidentiary hearing is unnecessary when a defendant has not made sufficient allegations to establish a prima facie violation of the fair-cross-section requirement or the specific allegation of systematic exclusion "has been disproved in another case[,] absent a showing that the record in the prior case is not complete or reliable").

Second, Blaylock argues that the district court erred by dismissing a prospective juror for cause without allowing Blaylock to question and potentially rehabilitate the juror. Reversal is not an available

---

[2]To the extent Blaylock includes African Americans in this argument, he waived any such claim by specifying to the district court that his fair-cross-section argument was limited to the underrepresentation of Hispanics/Latinos. *See Carter v. State*, 121 Nev. 759, 768, 121 P.3d 592, 598 (2005) (holding that an issue is waived if not properly preserved for appeal).

[3]Blaylock's claim that he was "prohibited from obtaining information that would allow him to analyze the selection process for his venire," lacks merit as the record does not show that he attempted to subpoena or access such information. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984) (noting a defendant's right to subpoena supporting documents and present supporting affidavits to meet the burden of demonstrating that an evidentiary hearing is warranted).

remedy here since Blaylock has not alleged that any of the seated jurors were partial. *See Weber v. State*, 121 Nev. 554, 581, 119 P.3d 107, 125 (2005) (noting that the focus of the prejudice inquiry with respect to alleged error in declining to remove a veniremember for cause is on the actually-seated jurors, not on those who were excused), *rejected on unrelated grounds by Farmer v. State*, 133 Nev. 693, 405 P.3d 114 (2017). We therefore need not address Blaylock's arguments regarding the alleged improper removal of a veniremember for cause.

Third, Blaylock argues that the district court erred in making its competency determination and in not holding a formal competency hearing. Here, despite Blaylock's claims of competency,[4] defense counsel continually notified the district court that Blaylock would not assist with his defense and was potentially delusional, which resulted in at least ten competency evaluations, appearances in competency court, and in-patient competency treatment. Blaylock's counsel again raised competency concerns right before trial regarding Blaylock's lack of communication with counsel and possible delusions—in part due to Blaylock rejecting a favorable plea negotiation. After a hearing with Blaylock and his counsel outside the State's presence, the district court concluded that a formal competency hearing was not required because, rather than there being a competency issue, Blaylock and his counsel merely disagreed on trial strategy. The district court did not abuse its discretion in this regard because neither Blaylock nor his counsel established reasonable doubt

---

[4]Blaylock expressed frustrations about his counsel causing trial continuances by repeatedly challenging his competency and also stated that he did not assist with his defense because he disagreed with his counsel's strategy.

sufficient to raise concerns as to Blaylock's ability to understand the charges against him or court proceedings, or his ability to assist counsel. *See Olivares v. State*, 124 Nev. 1142, 1147-48, 195 P.3d 864, 868 (2008) (reviewing competency determinations for an abuse of discretion, explaining that an incompetent defendant lacks "the present ability to understand either the nature of the criminal charges against him or the nature and purpose of the court proceedings, or is not able to aid and assist his counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding"). Indeed, in one evaluation when discussing his lack of communication with his counsel, Blaylock stated, "sometimes silence is wise," demonstrating that he was "able to aid and assist" his attorney but simply refused to do so; and Blaylock's other interactions with the court and responses to the court's questions regarding his counsel's claims of incompetency also support the district court's decision that a hearing was not necessary. *See id.* (explaining that a formal competency hearing is required when substantial evidence—defined as that raising "a reasonable doubt about the defendant's competency to stand trial"—shows that the defendant may not be competent to stand trial (further internal quotation marks omitted) (quoting *Melchor-Gloria v. State*, 99 Nev. 174, 180, 660 P.2d 109, 113 (1983))). Further, the record supports the district court's findings related to its conclusion that a competency hearing was not required where Blaylock had represented that he had no current or prior mental health issues and where seven of Blaylock's ten competency evaluations found him competent, including the final two. *See* NRS 178.400(2) (listing considerations for the court in making a competency determination); *Lipsitz v. State*, 135 Nev. 131, 135, 442 P.3d 138, 142 (2019) (concluding that the district court's independent

assessment of the defendant's competency, including canvassing him and his counsel, its own interactions with the defendant, and the defendant's responses to the court, were sufficient to determine that a competency hearing was not warranted given the defendant's understanding of the charges and proceeding and ability to aid in his defense, but "unwilling[ness] to aid in his defense"); *Olivares*, 124 Nev. at 1149, 195 P.3d at 869 ("In addition to the doubts that have been raised, the district court may consider all available information, including any prior competency reports and any new information calling the defendant's competency into question."). We therefore decline to reverse based on this argument.

Related to his competency arguments, Blaylock also contends that the district court erred by not holding a *Young*[5] hearing. To the extent Blaylock properly moved to substitute counsel by requesting a *Young* hearing, we conclude that the district court did not abuse its discretion in denying that request as it adequately inquired into Blaylock's reasons for his limited responses to his attorney, considered Blaylock's counsel's concerns, and reasonably determined that there was not an irreconcilable conflict. *See Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 842-43 (2005) (reviewing a district court's decision on a motion to substitute counsel for an abuse of discretion and concluding that a district court must adequately inquire into a defendant's grounds for the motion and not summarily deny a motion to substitute counsel), *modified on other grounds by Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006); *Young*, 120 Nev. at 968, 102 P.3d at 576 (outlining the factors to consider for a motion to substitute counsel); *Thomas v. State*, 94 Nev, 605, 608, 584 P.2d 674, 676 (1978) ("A defendant

---

[5]*Young v. State*, 120 Nev. 963, 102 P.3d 572 (2004).

SUPREME COURT
OF
NEVADA

(O) 1947A

5

cannot base a claim of inadequate representation upon his refusal to cooperate with appointed counsel." (internal quotation marks omitted)).

Fourth, Blaylock argues that his due process rights were violated when the State failed to gather and/or preserve evidence that could have supported his defense. "'The State's failure to preserve potentially exculpatory evidence may result in dismissal of the charges if the defendant can show bad faith or connivance on the part of the government' or 'that he was prejudiced by the loss of the evidence.'" *Daniels v. State*, 114 Nev. 261, 266-67, 956 P.2d 111, 115 (1998) (quoting *Howard v. State*, 95 Nev. 580, 582, 600 P.2d 214, 215-216 (1979)). Blaylock takes issue with law enforcement's failure to preserve the Craigslist ad used to solicit the drug sale and text messages and other conversations between Blaylock and law enforcement in setting up the buy. We conclude that Blaylock failed to show that the ad and memorialized conversations were exculpatory where Blaylock initiated contact with undercover detectives after seeing the ad, officers participating in the drug buy testified regarding their conversations with Blaylock leading up to the drug buy, and there was no evidence of any audio calls being recorded. *See Daniel v. State*, 119 Nev. 498, 520, 78 P.3d 890, 905 (2003) (reiterating that for a preservation-of-evidence claim, the exculpatory value of the evidence must be apparent before its loss or destruction). Even were the evidence exculpatory, Blaylock did not show governmental bad faith or connivance, nor prejudice from not having the ad or messages—at trial Blaylock utilized the alleged deficient investigation to impeach detectives' credibility and the State's case was not buttressed by the missing evidence. *See Leonard v. State*, 117 Nev. 53, 68, 17 P.3d 397, 407 (2001) (holding that a mere "hoped-for conclusion" that the evidence in question supported defendant's case is insufficient to show prejudice).

Blaylock also takes issue with law enforcement's failure to *gather* surveillance videos from the hotel where the buy took place, physical evidence in the room where drugs and paraphernalia were found, and evidence of the composition of every pill involved in the drug buy. But Blaylock failed to establish the evidence's materiality where any video surveillance would not have included audio or shown all of the areas where Blaylock interacted with the detectives, collection of DNA or other physical evidence was unnecessary where law enforcement knew Blaylock was the perpetrator, the controlled substance testing was conducted pursuant to standard lab procedures, Blaylock offered no corroboration of entrapment, and substantial evidence supported Blaylock's guilt—Blaylock's name was associated with both the phone number used to set up the buy and the hotel room where drugs were later found, law enforcement officers testified that Blaylock directly sold the drugs, and Blaylock admitted to possession of some of the drugs found in the room where a search warrant was executed. *See Daniels*, 114 Nev. at 267, 956 P.2d at 115 (determining first whether evidence is material, meaning having a reasonable probability that the defense having the evidence would have changed the proceedings' result, in considering a failure-to-gather-evidence claim); *Randolph v. State*, 117 Nev. 970, 987, 36 P.3d 424, 435 (2001) (weighing a defendant's lack of corroborating evidence in analyzing materiality). Accordingly, this claim lacks merit.[6]

---

[6]Given this conclusion, the district court did not err in refusing Blaylock's proposed gross negligence instructions related to his failure-to-gather-and-preserve-evidence arguments. *See Randolph*, 117 Nev. at 987, 36 P.3d at 435 (reiterating that where evidence is not material and the police did not act out of gross negligence or bad faith in not preserving it, a

SUPREME COURT
OF
NEVADA

(O) 1947A

Having considered Blaylock's claims and concluded no relief is warranted,[7] we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:    Hon. William D. Kephart, District Judge
       Clark County Public Defender
       Attorney General/Las Vegas
       Clark County District Attorney
       Eighth District Court Clerk

---

defendant is not entitled to an instruction that ungathered evidence was presumed to be unfavorable to the State).

[7]As there are no errors to cumulate, Blaylock's cumulative error claim fails. *See Lipsitz v. State*, 135 Nev. 131, 140 n.2, 442 P.3d 138, 145 n.2 (2019) (concluding that there were no errors to cumulate when the court found only a single error).